IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                   |   |                    |
|-----------------------------------|---|--------------------|
| JAFFE & HOUGH, P.C.,              | : |                    |
|     Plaintiff,| : |                    |
| v.                                | : | CIVIL NO. 09-3000  |
|                                   | : |                    |
| LAURA AND MICHAEL BAINE, h/w,     | : |                    |
|     Defendants.| : |                   |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**      **March 10, 2010**

This contractual dispute arises from a Power of Attorney and Contingency Fee Agreement (hereafter "Agreement") entered into between Plaintiff Jaffe & Hough, P.C. and Defendants Laura and Michael Baine[1]. Plaintiff asserts diversity jurisdiction under 28 U.S.C. § 1332.[2]

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In June 2006, Defendant Laura Baine suffered a serious fungal eye infection ("fusarium keratitis"), which resulted from her use of contact solution manufactured by Bausch & Lomb.[3] On August 1, 2006, Defendant Michael Baine met with Timothy R. Hough, Esq., a law partner, in Plaintiff's Philadelphia office in order to discuss Plaintiff's possible representation of

---

[1] Defendants are wife and husband.

[2] Compl. ¶ 1. Section 1332(a)(1) provides that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . [c]itizens of different States." 28 U.S.C. § 1332(a)(1) (2009).

[3] Compl. ¶ 6; Defs.' Mot. to Dismiss 1.

1

Laura Baine in a product liability claim against Bausch & Lomb.[4] Shortly thereafter, Laura Baine also met with Mr. Hough in Plaintiff's Philadelphia office.[5] Following these meetings, the parties entered into the Agreement.[6] Pursuant to the Agreement, Plaintiff agreed to prepare and prosecute Defendants' product liability claim in exchange for one-third of any recovery obtained from Bausch & Lomb without a trial, or forty percent of any recovery obtained after commencement of a trial.[7]

Approximately one year later, on July 30, 2007, Defendants discharged Plaintiff.[8] Plaintiff alleges that the discharge resulted from Defendants' desire to obtain local counsel in Florida,[9] whereas Defendants assert that it resulted from Defendants' dissatisfaction with Plaintiff's performance.[10] Regardless of the reason, Plaintiff avers that, up to the time of discharge, "Plaintiff performed significant work on behalf of the Defendants and also advanced costs on behalf of Defendants in connection with the prosecution of their claims."[11] On August 13, 2007, Plaintiff received correspondence from the law firm of Frost Van den Boom, PA (hereafter "Frost") stating

---

[4] Compl. ¶¶ 6, 7; Aff. of Timothy R. Hough, Esq. ¶¶ 2-4 (Ex. B of Pl.'s Opp'n to Defs.' Mot. to Dismiss).

[5] Aff. of Timothy R. Hough, Esq. ¶ 5.

[6] Compl. ¶ 7.

[7] Id. ¶¶ 8, 9.

[8] Id. ¶ 11.

[9] Pl.'s Opp'n to Defs.' Mot. to Dismiss 6.

[10] Defs.' Mot. to Dismiss 6.

[11] Plaintiff describes its "significant work" to include "researching the product, meeting with experts, obtaining medical records and identifying experts to prepare the matter for the Multi-District Litigation for these claims being directed in South Carolina." Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss 7. Plaintiff alleges that from August 2006 through July 2007 it performed "various professional services" and expended "sizable time" in preparing and prosecuting Defendants' claim. Compl. ¶¶ 17-18. Plaintiff asserts that the complex nature of the claim required "considerable work effort and diligent application . . . ." Id. ¶ 18.

that Defendants retained Frost to handle the product liability claim against Bausch & Lomb.[12] The agreement between Defendants and Frost provided that:

> The law firm of Jaffe & Hough may claim attorneys' fees and costs for their representation of the Baines in this matter. Any attorneys' fees and costs due [to] Jaffe & Hough, if any, shall be paid from the monies received by [Frost] for their attorneys' fees.[13]

On October 8, 2007, Frost filed a complaint against Bausch & Lomb in Polk County, Florida.[14] Thereafter, on or about March 2, 2009, Frost mediated a settlement of the claim against Bausch & Lomb in the amount of $762,500.[15] Plaintiff then made a demand upon Defendants for the payment of reasonable fees, "requesting the typical arrangement of one-third of the attorneys' fees derived by the Frost Firm who had settled the above-mentioned action without a trial."[16] Plaintiff believed it was entitled to that amount because Frost "utilized Plaintiff's work on behalf of Defendants, in part, in achieving a favorable result." Plaintiff asserts that it received no payment from Defendants, and that Defendants refused to consent to a payment of escrowed monies pursuant to the agreement between Defendants and Frost .[17] On July 2, 2009, Plaintiff filed the present Complaint against Defendants alleging claims for breach of contract and unjust enrichment/quantum meruit.

Defendants' instant Motion to Dismiss asserts that dismissal of Plaintiff's claims is

---

[12] Compl. ¶ 13.

[13] Authority to Represent Agreement (Ex. C of Compl.) (emphasis omitted).

[14] Compl. ¶ 20; Mot. to Dismiss 2.

[15] Compl. ¶ 20.

[16] Id. ¶ 22.

[17] Id. ¶ 25.

3

required because: (1) there are insufficient minimum contacts to support this Court's personal jurisdiction over Defendants, (2) the Complaint should be dismissed under forum non conveniens, (3) Plaintiff fails to state a claim for breach of contract,[18] (4) Plaintiff fails to state a claim for quantum meruit, and (5) Plaintiff fails to satisfy the jurisdictional amount in controversy requirement of $75,000. Plaintiff filed a brief in opposition, and the Motion is now ripe for review.

## II. DISCUSSION

### A. Personal Jurisdiction

When a defendant raises the question of personal jurisdiction on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must prove, by a preponderance of the evidence, facts sufficient to establish a federal court's jurisdiction over the claim.[19] In order to meet this burden, the plaintiff may rely on affidavits or other competent evidence.[20] The court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.[21]

To ascertain whether a federal court has personal jurisdiction over a defendant, the court must first "apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction", and second "apply the precepts of the Due Process Clause of the Constitution."[22] Because the reach of Pennsylvania's long arm statute is coextensive with the limits placed upon

---

[18] Plaintiff concedes that its breach of contract claim must be dismissed. Pl's Mem. of Law in Opp'n to Defs' Mot. to Dismiss 17-18. At the time Defendants are alleged to have breached the contract between the parties, Defendants had already terminated the agreement by discharging Plaintiff.

[19] Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).

[20] Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (citing Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)).

[21] Id. (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003)).

[22] IMO Indus., Inc. v. Kiekert A.G., 155 F.3d 254, 259 (3d Cir. 1998).

states by the Constitution,[23] the Court need only address the second step here. Under the Due Process Clause, a plaintiff may prove personal jurisdiction by establishing that the court has either specific or general jurisdiction over the defendant. When a plaintiff's claim is "related to" or "arises out of" the defendant's contact with the forum, the court is said to exercise "specific jurisdiction."[24] Establishing specific jurisdiction requires a two-part analysis: first, the plaintiff must show that the defendant has constitutionally sufficient minimum contacts with the forum.[25] Second, once minimum contacts are established, a district court must determine, in its discretion, whether the exercise of personal jurisdiction comports with "'traditional notions of fair play and substantial justice.'"[26]

In order to establish that the defendant's contacts are constitutionally sufficient, the plaintiff must show that the defendant's conduct and connection with the forum "'are such that he should reasonably anticipate being haled into court there.'"[27] There must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State,

---

[23] Pennsylvania's long arm statute provides that "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b) (2009).

[24] IMO Indus., 155 F.3d at 259 (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). General jurisdiction, on the other hand, arises when the defendant's contacts are "'continuous and systematic.'" Id. at 259 n.2 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). Here, Plaintiff does not assert general jurisdiction as a basis for personal jurisdiction. Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss 11.

[25] IMO Indus., 155 F.3d at 259 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

[26] Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147, 150-151 (3d Cir. 1995) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

[27] Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)).

5

thus invoking the benefits and protections of its laws.'"[28] Thus, when the defendant engages in significant activity within a forum, or creates continuing obligations with the residents of the forum, it is presumptively not unreasonable for the defendant to submit to the burdens of litigation in that forum.[29] Even a single contact can support jurisdiction; however, such contact cannot be random, fortuitous or attenuated.[30]

Although the existence of a contractual relationship alone does not establish the requisite contact for specific jurisdiction, the existence of additional factors relevant to the parties' contractual relationship may.[31] These factors include "the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, [and] the course of dealing between the parties."[32] Here, Defendants met with Plaintiff in Plaintiff's Philadelphia office on multiple occasions.[33] The parties negotiated and executed the Agreement in Philadelphia, and Defendants returned the executed Agreement to Plaintiff's Philadelphia office.[34] During the course of the representation, Plaintiff responded to inquiries made by Defendants from its Philadelphia

---

[28] Vetrotex Certainteed Corp., 75 F.3d at 150 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

[29] Burger King, 471 U.S. at 476.

[30] Id. at 475, 476 n.18 (citations omitted). With respect to interstate contractual obligations, the Supreme Court noted that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Id. at 473 (citations omitted).

[31] Mellon Bank PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1222-23 (3d Cir. 1992).

[32] Id.

[33] Compl. ¶ 6; Aff. of Timothy R. Hough, Esq. ¶¶ 2, 5.

[34] Compl. ¶ 7; Aff. of Timothy R. Hough, Esq. ¶ 4.

office.[35] And finally, as a result of its contractual obligations with Defendants, Plaintiff allegedly "spent considerable time in the case including researching the product, meeting with experts, obtaining medical records and identifying experts," all of which occurred in Pennsylvania.[36]

The Third Circuit, in Remick v. Manfredy,[37] held that a factually similar scenario satisfied the requisite contact necessary to establish specific jurisdiction. In Remick, an Indiana resident breached a fee agreement he entered into with a Pennsylvania attorney.[38] In response, the attorney sued the resident and his representatives in the Eastern District of Pennsylvania for breach of contract and certain tort claims. The Remick Court held that the exercise of specific jurisdiction over the defendant was permitted; despite the absence of his physical presence in the forum, the defendant's out-of-state contacts directed at the forum sufficiently established personal jurisdiction.[39]

Here, Defendants returned an executed agreement to Plaintiff's Philadelphia office, Plaintiff's services were performed in Philadelphia, and Defendants directed communications to Plaintiff at its Philadelphia office. Unlike the defendant in Remick, Defendants also had a physical presence in the forum. Therefore, the reasoning in Remick supports a finding that Defendants in the instant case had minimum contacts with the forum state of Pennsylvania.

---

[35] Aff. of Timothy R. Hough, Esq. ¶ 5.

[36] Id. ¶ 6.

[37] 238 F.3d 248 (3d Cir. 2001).

[38] Id. at 256.

[39] These contacts included the following: (1) the defendant solicited the attorney via telephone, (2) the defendant signed a fee agreement, which the defendant returned to the attorney's Philadelphia office, (3) the defendant sent at least one payment to the attorney's Philadelphia office, (4) the attorney performed services on behalf of the defendant in the attorney's Philadelphia office, and (5) there were repeated communications between the defendant and the attorney during the course of the representation. Id. at 256.

7

Next, the Court must determine whether the exercise of personal jurisdiction comports with the traditional notions of fair play and substantial justice. In making this determination, the court may, in appropriate cases, evaluate (1) the burden placed upon the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.[40] Although Defendants bear the burden to present a "compelling case" that demonstrates that the exercise of jurisdiction is unreasonable,[41] Defendants do not address this portion of the jurisdictional analysis, and instead focus solely on minimum contacts.

Because Defendants voluntarily established a one-year long contractual relationship with a Pennsylvania law firm, Defendants have purposefully availed themselves to the privileges of Pennsylvania law, and it is presumptively not unreasonable to require Defendants to submit to litigation in Pennsylvania.[42] Additionally, the Court finds that the exercise of personal jurisdiction comports with the notions of fair play and substantial justice.

**B. Forum non conviens**

In their second argument, Defendants contend that Plaintiff, by filing a lien on Defendant's judgment in Florida's Tenth Judicial Circuit, has "made it abundantly clear that [it is]

---

[40] Burger King, 471 U.S. at 476-77 (citations omitted).

[41] Carteret Sav. Bank, 954 F.2d at 150 (quoting id. at 477). The inconvenience of litigating in a foreign forum alone does establish that the exercise of personal jurisdiction is "unreasonable"; instead, the reasons put forth by the defendant must be compelling. Id.

[42] See Farino, 960 F.2d at 1222.

8

amenable to litigation in the alternative jurisdiction of the Tenth Judicial Circuit." Defendants use the term "forum non conveniens" to describe their request; the Court interprets Defendants' request as a motion to transfer venue pursuant to 28 U.S.C. § 1404.[43]

Section 1404 provides that "[f]or the convenience of the parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[44] Once the court determines whether venue would be appropriate in the proposed transferee district, the Court must employ the analysis established in Jumara v. State Farm Insurance[45] to "'determine whether on balance litigation would more conveniently proceed and the interests of justice be better served by transfer' to that district."[46]

The threshold question in the transfer analysis is whether the transferee venue is appropriate under 28 U.S.C. § 1391(a).[47] Because Defendants reside in Bartow, Florida and seek to litigate this case in Florida, this Court selects the Middle District of Florida as the proposed venue for the transfer analysis.[48] 28 U.S.C. § 1391(a)(1) provides that "[a] civil action wherein jurisdiction

---

[43] The United States Supreme Court recently observed that "[t]he doctrine of forum non conveniens has continued application in federal courts only where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litgational convenience best." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430 (2007) (citations and quotations omitted). Instead, when inconvenience of a party is raised in a matter involving interstate parties, federal courts generally transfer such cases to more convenient sister courts under 28 U.S.C. §§ 1404, 1406. As Defendants do not argue that this is a "rare instance" that requires the application of forum non conveniens, this Court interprets Defendant's request as a motion to transfer under § 1404.

[44] 28 U.S.C. § 1404(a).

[45] 55 F.3d 873 (3d Cir. 1995).

[46] Prell v. Columbia Sussex Corp., 2007 U.S. Dist. LEXIS 78533, at *8 (E.D. Pa. Oct. 22, 2007) (quoting id. at 879).

[47] Id. at *5.

[48] Bartow is located in the Middle District of Florida's jurisdictional territory. See Court Locator, http://www.uscourts.gov/courtlinks/ (last visited Feb. 12, 2010).

9

is founded only on diversity of citizenship may, except as otherwise provided by the law, be brought [in] a judicial district where any defendant resides, if all defendants reside in the same State . . . ."[49] As Defendants live in the Middle District of Florida, it is appropriate under § 1391(a)(1).

The Court must assess the transfer motion in light of certain private and public interests.[50] The private interests include the plaintiff's forum preference as manifested in the original choice of venue; the defendant's preference; whether the claim arose elsewhere; the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and the location of the books and records.[51] The public interests include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative court congestion in the two fora; the local interest in deciding local controversies; the public policies of the fora; and the familiarity of the courts with the applicable state law in diversity cases.[52]

Defendants sole argument concerning the Jumara private interests is that Defendants' maintain a one-income household, and that it would be inconvenient for Defendants to travel to Pennsylvania to attend hearings and trial.[53] However, the court must balance that preference against Plaintiff's choice of venue, a choice entitled "considerable weight" and one that "should not be disturbed lightly."[54] Whenever Jumara's private interest analysis is based solely on party preference,

---

[49] 28 U.S.C. § 1391(a) (2002).

[50] See Jumara, 55 F.3d 873.

[51] Id. at 879.

[52] Id. at 879-880.

[53] Defendants state that Laura Baine does not work and that Michael Baine is employed as a sheriff with Polk County, Florida. Defs.' Mot. to Dismiss 6. As such, Defendants contend that "[a]ny traveling to Pennsylvania for hearings and evidentiary hearings as well as trial would be a great strain on the Baines." Id. (emphasis omitted).

[54] Prell, 2007 U.S. Dist. LEXIS 78533, at *15 (citations omitted).

10

a district court must defer to the venue originally selected by the plaintiff. Consideration of the remaining private interests strengthens the balance in favor of Plaintiff's choice of venue. The parties executed the Agreement in Pennsylvania, and many of the operative facts occurred in this forum. Defendants have not suggested that any witnesses would be unavailable for trial in Pennsylvania, and many of the books and records at issue are located in Plaintiff's Philadelphia office. In sum, the private interests favor the Plaintiff's choice of venue.

As to the Jumara public interest factors, Defendants make several conclusory arguments that are, at best, unpersuasive. First, Defendants contend that "[t]he Pennsylvania court must have a high volume and this additional case would not benefit the reduction of any administrative congestion."[55] In stating so, Defendants fail to address how a Florida court - whether federal or state - would be any less congested. Jumara requires an analysis of "the relative administrative difficulty in the two fora resulting from court congestion," not just the congestion of the transferring forum.[56] Second, Defendants assert, without support, that "there really is no local interest for Pennsylvania to have this case decided 'at home.'"[57] Again, Defendant does not explain why a venue in Florida would be better suited to hear this matter.[58] Finally, Defendants add that "[t]here is no benefit to trying this case in Pennsylvania because the law of Florida and Pennsylvania with regard to the evidence that needs to be produced in order to obtain quantum meruit is very

---

[55] Defs.' Mot. to Dismiss 7-8.

[56] 55 F.3d at 879.

[57] Defs.' Mot. to Dismiss 8.

[58] Although the parties make no argument on choice of law, the Agreement was negotiated and executed in Pennsylvania, Plaintiff asserts that it performed its obligations under the Agreement in Pennsylvania, and Defendants' letter terminating the Agreement was addressed to Plaintiff's Philadelphia office. These facts strongly suggest that a Pennsylvania court would be more appropriate.

similar."[59]  Even assuming that this is true, it is not an argument for why the Middle District of Florida would be a better venue than the present one.

Defendants have not met their burden of proof, and based on the foregoing, the Court finds that a transfer is not appropriate.

**C. Failure To State A Claim Under Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a claim that fails to state a claim upon which relief can be granted.[60]  When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the non-moving party."[61]  In Bell Atlantic Corporation v. Twombly,[62] the United States Supreme Court clarified this standard, explaining that "[a] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[63]  Instead, a plaintiff must allege facts that "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[64]

Defendants have moved to dismiss Plaintiff's breach of contract and quantum meruit

---

[59]Defs.' Mot. to Dismiss 8.

[60]FED. R. CIV. P. 12(b)(6).

[61]Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).

[62]550 U.S. 544 (2007).

[63]Id. at 555 (citations omitted).

[64]Id.

claims under Rule 12(b)(6). Plaintiff admits that its breach of contract claim must fail,[65] but Plaintiff contends that it states a legitimate claim for quantum meruit.[66] Quantum meruit is a quasi-contractual and equitable theory, in which a duty arises in the absence of an agreement when one party is unjustly enriched at the expense of another.[67] To satisfy the pleading requirements of quantum meruit, Plaintiff must allege that: (1) Plaintiff conferred a benefit upon Defendants, (2) Defendants appreciated the benefit, and (3) Defendants accepted and retained the benefit under circumstances that would make it inequitable or unjust for Defendants to retain the benefit without payment of value.[68] In its Complaint, Plaintiff states that it supplied Defendants with extensive legal services, Defendants benefitted from the services provided by Plaintiff, and Defendants utilized these services without paying Plaintiff for them.[69] Accepting these allegations as true and construing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has satisfactorily pled a claim for quantum meruit. Therefore, Defendants' motion on this issue is denied.

**D. Failure To Satisfy the Jurisdictional Amount In Controversy Requirement**

Finally, Defendant asserts that Plaintiff's Complaint must be dismissed for failure to meet the $75,000 jurisdictional amount in controversy requirement.[70] When a factual dispute arises

---

[65] See supra, note 18.

[66] Pl.'s Opp'n to Defs.' Mot. to Dismiss 17.

[67] Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 998-999 (3d Cir. 1987).

[68] Allegheny Gen. Hosp. v. Phillip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000) (citing 16 Summary of Pa. Jur. 2d COMMERCIAL LAW § 2.2 (1994)).

[69] Compl. ¶¶ 34-37.

[70] The other requirement for diversity jurisdiction, complete diversity between the parties, is uncontroverted, as Plaintiff is a law firm with its principal place of business in Philadelphia, PA, and Defendants are citizens and residents of Bartow, Florida. Compl. ¶¶ 1, 2.

over the jurisdictional amount, the court is required to first make a limited factual determination,[71] applying a preponderance of the evidence standard,[72] with the party invoking diversity jurisdiction bearing the burden to prove the jurisdictional requirements.[73] Although courts generally accept a plaintiff's good faith allegations of the amount-in-controversy, the plaintiff, when challenged, must produce sufficient evidence to justify its claim.[74]

Then, the court must apply the "legal certainty" test announced by the Supreme Court in St. Paul Mercury Indemnity Company v. Red Cab Company.[75] Under St. Paul Mercury, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith,"[76] and dismissal is justified only when it "appear[s] that to a legal certainty that the claim is really for less than the jurisdictional amount . . . ."[77]

Because Plaintiff has conceded that its breach of contract claim must be dismissed,[78] the remaining issue is whether the claim for quantum meruit, standing alone, satisfies the amount-in-controversy requirement. Defendants argue that because Plaintiff did not meaningfully participate in the resolution of their claim against Bausch & Lomb, the $75,000.00 threshold amount

---

[71] Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 398 (3d Cir. 2004).

[72] Id.; Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).

[73] Samuel-Bassett, 357 F.3d at 398.

[74] Tarbuck, 62 F.3d at 541.

[75] 303 U.S. 283, 288 (1938).

[76] Id.

[77] Id.

[78] See supra, note 18.

cannot be met. Specifically, Defendants aver that "Plaintiff never even filed suit, did not participate in any discovery, did not participate in the mediation, did not contribute to the mediation, and did not contribute to the lawsuit."[79] Defendants contend that Plaintiff's repeated allegation that it did "significant work" – without providing the details of that work or the dollar amounts involved – is not sufficient to satisfy the legal certainty standard.[80]

According to Plaintiff, the services it performed on Defendants' behalf include researching the product, meeting with experts, obtaining medical records, and identifying experts in preparation of the Multi-District Litigation involving Bausch & Lomb.[81] Plaintiff alleges that it "expended sizable time in rendering services in the prosecution Defendants' claim,"[82] although Plaintiff fails to specify exactly how much time it expended. Finally, Mr. Hough attests that "[t]he work performed by my office, including my own personal efforts was substantial and exceeds $75,000.00 . . . ."[83]

Although it is contested that Plaintiff will recover an amount greater than $75,000 for its limited role in the resolution of Defendants' claim, it is not apparent to a legal certainty that Plaintiff will not recover at least that amount. Accepting Plaintiff's evidence as true, as well as applying the legal certainty standard deferentially, the Court finds that the jurisdictional amount in controversy requirement is satisfied.

---

[79] Defs.' Mot. to Dismiss 9.

[80] Id. 11.

[81] Aff. of Timothy R. Hough, Esq. ¶ 6.

[82] Compl. ¶ 18.

[83] Aff. of Timothy R. Hough, Esq. ¶ 9.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's breach of contract claim is dismissed and the Court retains jurisdiction over Plaintiff's quantum meruit claim.

An appropriate Order follows.